IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Criminal No. 2:19-CR-20498 |
| v. ) | |
| ) | |
| (1) ALEX CASTRO, ) | |
| (2) JASON KECHEGO, and ) | |
| (3) ADAM WRIGHT, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DECLARATION OF ANTHONY GARROW**

I, Anthony Garrow, do hereby declare as follows:

      1.      I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP") and have been so employed since November 1993. I began my law enforcement career as a Correctional Officer at the United States Penitentiary located in Lompoc, California. I have held positions of increasing authority and responsibility throughout my BOP career. I have served as a Special Investigative Agent, a role in which I investigated crimes within the penitentiary involving criminal street or prison gangs. My duties included identifying and researching suspected criminal gangs, their members and associates; reviewing source documents in order to validate, or invalidate an individual as a gang member, associate, or leader; conducting debriefings of members of gangs; and reviewing intelligence materials and evidence. I have participated in local and national law enforcement joint task forces created to combat gang violence, both inside and outside the prison. I am familiar with the methods of gangs and other criminal suspects, including methods used to cover up crimes and to thwart investigations of criminal activities. I have extensive formal training in conducting gang and

1



other criminal investigations, including attending over 80 gang and intelligence training seminars and symposiums. These include Investigative Intelligence Training; FBI Analyst Training; National Alliance of Gang Investigators World Gang Summit; Investigative Intelligence Training; International Law Enforcement Academy Training related to Managing Gang Members in Prison; and the Gangs, Guns and Drugs National Conference, in addition to multiple other gang conferences and training seminars. I have conducted over 70 lectures around the country for law enforcement professionals. I have presented to the Drug Enforcement Administration, the Federal Bureau of Investigation, the U.S. Marshals Service, the BOP, the Department of Homeland Security, the Department of Justice, Canadian law enforcement, El Salvadoran law enforcement, Mexican law enforcement, Honduran law enforcement, Belize law enforcement, and the Joint Chiefs of Staff's Office at the Pentagon. I have testified in criminal and gang-related matters, including as an expert witness. In September 2008, I was assigned to the position of Supervisory Intelligence Officer at the Bureau's Central Office in Washington, D.C. I was detailed to the National Gang Intelligence Center, a multi-agency entity concentrating on gangs operation on a national level. In May 2016, I assumed the position of Chief of the Sacramento Intelligence Unit ("SIU"). In that role, I conduct gang training for BOP staff, FBI personnel and other state and local law enforcement agencies. I provide instruction to various groups on such topics as prison intelligence, national gang trends, prison radicalization, gang identification and management, and other related topics. In my current position, I serve as the point of contact for outside law enforcement agencies on BOP and prison related issues. As part of my official duties as Chief of the SIU, I have access to documents maintained and used by the BOP in the ordinary course of business. These documents include, but are not limited to,

information maintained in the SENTRY[1] database, inmate central files, the BOP's digital intelligence database called TRUINTEL,[2] and intelligence documents and information regarding groups which the BOP has determined posed unique threats and that have been designated as Security Threat Groups.

2. The SIU is a BOP-sponsored, multi-agency intelligence unit which provides investigative and operational intelligence related to security threat groups. The SIU works with BOP staff nationwide and with other correctional agencies to maximize the safety of correctional facilities and the public. The SIU reviews for approval for all institution Security Threat Group validation submissions. Additionally, U.S. Probation staff are detailed to the SIU to assist BOP SIU personnel in providing support and gang intelligence products as well as training to other Federal, state, and local law enforcement and correctional agencies. My position as Chief of the SIU compels me to inform the Court of the security concerns a release of BOP/ SIU records poses to the BOP inmates, staff, and the public.

3. I make this declaration in support of the government's objections to Defendants' Joint Motion for Specific Discovery ("Motion") which requests, among other things, BOP

---

[1] SENTRY is the BOP's national database that tracks various data regarding an inmate's confinement, including but not limited to the inmate's institutional history, sentencing information, program participation and completion, administrative remedies, and discipline history.

[2] I have access to BOP/ SIU records as part of my job duties and responsibilities. I have access to a BOP digital database called TRUINTEL which contains reports searchable by authorized BOP staff. TRUINTEL contains information uploaded by BOP Special Investigative Services ("SIS") staff and BOP Intelligence staff in the institutions, BOP Regional Offices and Central Office. The documents maintained in TRUINTEL are sensitive information regarding BOP security concerns, operations, and management. For example, TRUINTEL contains reports regarding federal inmates, who have been validated and verified by BOP staff as Security Threat Group members (or gang members), as well as debriefing reports of inmates who wish to disavow their gang affiliation.

policies and protocols regarding how BOP personnel conduct investigations and interviews (including mass interviews) as well as how BOP personnel assess, classify, and validate gang and Security Threat Group members, associates, and affiliates. The Motion also seeks BOP documentation and information relating to intelligence information regarding the three defendants and four victims. Finally, it seeks all information about three specific groups (Surenos, Skinheads, and Aryan Brotherhood) including constitutions, membership requirements, disciplinary violation by group members, and all documents showing efforts to increase power and influence in the BOP.

4. Production of these types of documents as outlined in paragraph 3 of this declaration would pose a threat to the security of BOP correctional operations and public welfare. The BOP's core mission is to confine offenders, remanded to the custody of the Attorney General within safe, secure prisons while also ensuring the safety and security of the general public. Throughout my career, I have witnessed changes in the inmate population from traditional federal offenders to those individuals who are associated with criminal organizations, such as street gangs involved in drug and violent crimes, and individuals who claim membership or allegiance to prison gangs that have developed in state or federal correctional systems. Because of the increasing sophistication of these criminal organizations, the BOP has developed its own operations to maintain the security of federal institutions. These operations include the SIS units at institutions and the Intelligence Section at the national level, including the SIU. The public release of these sensitive but unclassified BOP materials poses an unacceptable risk to the safety, security, and operations of federal correctional institutions and to the individuals described/identified in the materials.

5. The distribution of this intelligence information presents a risk of harm to the safe, secure, orderly running of correctional facilities as these materials could lead to the identification and targeting of staff and inmates who cooperate nd have provided information in these investigations and reports.

6. Additionally, these materials contain BOP investigative methodology and techniques, including detailed security procedures of the agency. If material such as this is released to the general public or inmates, criminally-minded individuals bent on participating in illegal activity would be provided enough information to change or tailor their activities or methodology to avoid identification or interdiction by correctional staff inside institutions or outside law enforcement agencies. The disclosure of this information to anyone other than investigative staff could assist current and potential subjects in circumventing security investigations and procedures which are designed to detect and prevent illegal activities and to maintain institutional operational security. Release of this material to inmates or non-law enforcement individuals compromises the BOP's ability to manage its prison population, as well as poses a risk to security investigations and criminal investigations.

7. Also, debriefing reports are typically conducted with inmates who are active members of Security Threat Groups and decide to leave gang life. Historically, when gang members attempt to leave that life it can be difficult, if not impossible. The act of removing oneself places an active member in grave danger. Accordingly, great care is taken by the BOP to protect the identity and the efforts of these individuals, including writings and reports prepared during this process. Because of the personal nature of many of these writings, even redactions are inadequate to mask the identity of the participant from former associates.

8.  For the above-stated reasons, the BOP objects to the production of these types of materials.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of November, 2019 in Rancho Cordova, California.

Anthony Garrow
Chief
Sacramento Intelligence Unit
Federal Bureau of Prisons